## Commonwealth vs. Richard D. Brooks.

Suffolk. February 5, 1996. - May 3, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & Fried, JJ.

*Homicide. Joint Enterprise. Evidence,* Joint enterprise, Hearsay, State of mind, Flight. *Practice, Criminal,* Instructions to jury, Capital case. *Malice.*

Evidence at a murder trial was sufficient for the jury to have found the defendant guilty of first degree murder either as a joint venturer or as a principal. [576-577]

At a murder trial, the evidence did not warrant an instruction on manslaughter and there was no error in the judge's refusal to instruct on involuntary manslaughter and there was no substantial likelihood of a miscarriage of justice in the judge's failure to instruct on voluntary manslaughter. [578]

At a murder trial the judge's instruction to the jury on circumstantial evidence [578-580] and on malice aforethought [580-581] did not create a substantial likelihood of a miscarriage of justice.

At a murder trial, there was no error in the judge's admitting in evidence a certain hearsay statement of the defendant that was relevant to the defendant's state of mind, viz., hostility toward the witness, and that was relevant to motive. [581]

After review under G. L. c. 278, § 33E, of a murder conviction, this court found no reason to order a new trial or to order entry of a lesser degree of guilt. [582]

Indictments found and returned in the Superior Court Department on June 27, 1990.

The cases were tried before *Robert W. Banks,* J.

*Alfred E. Nugent* for the defendant.

*Lisa M. Scalcione,* Assistant District Attorney, for the Commonwealth.

Lynch, J. A Superior Court jury found the defendant and a codefendant guilty of murder in the first degree, unlawful carrying of a firearm, two indictments charging assault and battery by means of a dangerous weapon, and two indict-

ments charging assault with intent to murder by means of a dangerous weapon.[1]

On appeal, the defendant argues that: (1) there was insufficient evidence that he acted as a participant in the crime; (2) the jury instructions were in error because the judge failed to charge as to manslaughter and the judge's description of circumstantial evidence was prejudicial; (3) the judge erred in admitting evidence of a threat made to one of the witnesses; and (4) evidence of flight alone is not enough to convict. We have considered these arguments and have reviewed the entire record pursuant to G. L. c. 278, § 33E (1994 ed.). We affirm the convictions.

We briefly summarize the facts as the jury could have found them. On the night of June 2, 1990, and into the early morning of June 3, 1990, a group of five young men were gathered on the porch of a house in the Dorchester section of Boston. They had walked to a nearby Chinese restaurant and a few of them had bought food. On the way back from the restaurant, a small red automobile with the defendant in the passenger seat slowly passed the group several times.

The five men returned to the house and were sitting around a table on the porch, eating and talking. The same red automobile that had passed the men as they walked back from the restaurant passed the house, now with more passengers. Shortly thereafter, three men approached the house from the direction that the red automobile had taken. The men walked in a line, with the hoods of their sweatshirts up and tied under their chins. The defendant was the first one in the line and was recognized by two of the men on the porch. The men stopped on the sidewalk in front of the porch. One of the witnesses from the porch said "What's up, Richard?" to the defendant. A sixth man came from the house and asked what the men wanted. One witness saw the third man in line start to manipulate the top of a gun, and saw the second man with a gun in his hand. No one saw a gun in the defendant's hand. Some or all of the men standing on the sidewalk started shooting at the men on the porch.

One victim was shot in the back and died. Two other men on the porch were severely injured. After numerous shots had

[1]The defendant and a codefendant were tried jointly. The cases were severed on appeal.

been fired the defendant and the other men ran to the red automobile and drove away. A neighbor heard the shots and took down the registration plate number. The automobile, which had been stolen earlier in the day, was found abandoned a short time later.

At least two guns, a .32 caliber and a .38 caliber, had been fired at the porch by the men standing on the sidewalk. A full magazine clip of .22 caliber ammunition was found on the sidewalk. Based on where the men were standing on the sidewalk and the location of the spent .32 caliber shells, the jury could have inferred that the defendant fired the .38 caliber weapon.

The defendant, who had threatened one of the men on the porch on two prior occasions, left the State within a week of the incident and applied for and received a passport in Miami, Florida, which he used to travel to Honduras. He was arrested reentering the country after his second trip to Honduras.

1. *Sufficient evidence.* We first determine whether the Commonwealth introduced sufficient evidence that the defendant was a participant or a joint venturer in the shooting. The Commonwealth's theory was that the defendant was guilty either as a principal or as a joint venturer. See *Commonwealth* v. *Cohen*, 412 Mass. 375, 378 (1992). The judge correctly instructed the jury on joint venture and the defendant does not contend otherwise. In order for a defendant to be convicted of joint venture, there must be evidence that the defendant was: "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988), quoting *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983). The evidence was sufficient for the jury to have found each of these elements beyond a reasonable doubt. It cannot be seriously contended that the evidence failed to place the defendant at the scene of the crime. Two direct eyewitnesses who knew the defendant placed him there. One of the witnesses even asked "What's up, Richard?" before the shooting began.

A question is raised by the defendant's argument that there was insufficient evidence that the defendant knew of, and shared, the shooters' intention to kill or grievously injure the

men on the porch. See Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). Although there was no direct evidence that the defendant fired a gun, there was sufficient circumstantial evidence that the defendant was either one of the shooters or had joined in the others' intent. The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable. *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980), and cases cited. The defendant, who had twice threatened one of the victims and who had been following or perhaps stalking the group on the night of the crime, was first in a line of three men who approached the group sitting on the porch. Although it was June, they walked with their sweatshirt hoods up. Without saying anything at least two of the men on the sidewalk then opened fire on the group on the porch. Spent bullets from both a .32 and a .38 caliber weapon were found at the scene and one witness saw the third man in the line manipulating the top of a gun that would have accommodated the kind of .22 caliber magazine clip found unused on the sidewalk. Cartridge casings from a .32 caliber weapon were found on the sidewalk to the left of the .22 caliber magazine when facing the house. There was no residue left on the sidewalk near where the defendant had been standing, but .38 caliber revolvers do not eject cartridges. At least one round had been fired by a .38 caliber revolver.

From the evidence the jury could have inferred that the three men each brought a gun to the scene: The last man in line, a .22 caliber rifle; the middle man, a .32 caliber automatic; and the first man, the defendant, a .38 caliber revolver. After the shooting the defendant fled with the other men in a stolen automobile and left the State within the week. Even if the evidence did not warrant the conclusion that the defendant was one of the shooters, the jury were warranted in inferring that he acted in concert with his companions. See *Commonwealth* v. *Williams, ante* 111, 121 (1996). The defendant, who had previously expressed animosity toward one of the victims, went to the scene of the shooting with two companions; the three men carried three guns, two handguns and a rifle, to the scene in a small motor vehicle; all three approached the victims with their hoods up obscuring their faces on a June night; and all three fled the scene together. The evidence was sufficient to support a guilty verdict against the defendant either as a joint venturer or as a principal.

2. *Jury instruction.* The defendant claims that error arose from the judge's failure to instruct on manslaughter and his charge on circumstantial evidence.

If any view of the evidence in a case would permit a verdict of manslaughter rather than murder, a manslaughter charge should be given. *Commonwealth* v. *Walden*, 380 Mass. 724, 726 (1980). The defendant was not entitled to such an instruction. Trial counsel requested an instruction on involuntary manslaughter. A verdict of involuntary manslaughter is possible only where the defendant caused an unintentional death (1) during the commission of an act amounting to wanton or reckless conduct, or (2) during the commission of a battery. See *Commonwealth* v. *Nichypor*, 419 Mass. 209, 217 (1994). Here there was no evidence of either wanton or reckless conduct, or an unintentional killing. An involuntary manslaughter charge is not required when it is obvious that "the risk of physical harm to the victim creates a 'plain and strong likelihood that death would follow.' " *Commonwealth* v. *Fitzmeyer*, 414 Mass. 540, 547 (1993), quoting *Commonwealth* v. *Sires*, 413 Mass. 292, 303 (1992).

Neither was there sufficient evidence to require an instruction on voluntary manslaughter. Trial counsel specifically declined the judge's offer to instruct on voluntary manslaughter, so we review to see whether the failure so to instruct created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Mello*, 420 Mass. 375, 379-380 (1995). "Voluntary manslaughter is 'a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat.' " *Commonwealth* v. *Nichypor, supra* at 216, quoting *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931). There was no evidence that the defendant or the other men on the sidewalk acted out of sudden passion or were provoked in any way by the men on the porch, or that the incident occurred in the course of sudden combat. There was no error.

For the first time on appeal the defendant objects to the judge's charge on circumstantial evidence. We review to see whether the instruction created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Burke*, 414 Mass. 252, 265 (1993). The defendant complains that the judge's explanation of circumstantial evidence by alluding to a "rainstorm" was confusing and that the "puzzle" analogy

would improperly cause the jury to infer guilt.[2] We have recently been somewhat critical of an almost identical charge. *Commonwealth* v. *Rosa, ante* 18, 28 (1996). There we said: "Given the close connection between circumstantial evidence instructions and reasonable doubt instructions, it is best for judges to avoid examples that have numeric or quantifiable implications." *Id.* Here the judge strayed beyond that admonition in an otherwise proper charge by twice referring to the number of pieces in the illustrative picture puzzle. But here, as in *Rosa*, the rest of the charge was correct, including the discussion of reasonable doubt and burden of proof. The judge repeatedly told the jury that a guilty verdict cannot be based on probability and included in his charge the classic instruction from *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). As we said in *Rosa*: "[The *Webster* instruction] can provide adequate explanation of other facets of an instruction that by themselves might be considered erroneous . . . . *"Commonwealth* v. *Rosa, supra* at 29. The charge on circumstantial

[2]The judge charged the jury on circumstantial evidence as follows:

"We also have circumstantial evidence. Circumstantial evidence is evidence not on the main fact at issue but on certain other facts or circumstances that are so related to each other and the main fact to be proved that upon proof of the facts or circumstances related to each other, you may draw an inference that the main fact at issue exists.

"I use an oversimplified example. Sometimes I take the example of a picture puzzle. If you have a picture puzzle with a hundred parts in it, and you sit down and start to put it together and you suddenly find out you have only got about seventy-two parts and, as you sit down, in the framework of that puzzle you look and see missing areas but as you look at it, you can visualize what really would be portrayed if all of the parts were there because you draw an inference from what you have, those parts that are before you, that the whole exists. You can visualize a face or a seascape, a picture of a house. There is something missing but you draw that inference that's what it is.

"I will give you another really oversimplified example. Say, if you were out on the Southeast Expressway on a nice, sunshiny day, and say you were heading down towards Cape Cod and as you proceed along south on the highway, if you looked over into the northbound lanes going back in the city, you suddenly saw a string of eight or ten cars go by you soaking wet and you drove another three or four hundred yards down the road and ran into a rainstorm, you draw the inference those inbound cars went through that rainstorm. You weren't there, you didn't see it happen, you didn't have any direct observations to rely upon but from that simple factual situation, you draw an inference and you can do that here with the evidence in the case just like you do it in your everyday lives."

evidence did not create a substantial likelihood of a miscarriage of justice.

We note that a portion of the jury instruction on malice aforethought was incorrect in a way not raised in the defendant's brief. Therefore, we review under the G. L. c. 278, § 33E, standard. The judge instructed on malice aforethought as follows:

> "Malice aforethought refers to a frame of mind which includes not only anger, hatred and revenge, but also every other unlawful and unjustifiable motive. . . .
>
> ". . .
>
> "In its simplest terms malice aforethought includes any unexcused specific intent to kill, or any unexcused specific intent to do grievous bodily harm, or lastly, any specific unexcused intent to do an act creating a plain and strong likelihood that death or grievous bodily harm would follow.
>
> "Now, malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known, according to common sense, there was a plain and strong likelihood that death or grievous bodily harm would follow the contemplated act."

We have indicated that "frame of mind" language such as the judge used is not helpful and ought to be omitted from a charge on malice. *Commonwealth* v. *Eagles,* 419 Mass. 825, 836 (1995). Both references to "grievous bodily harm" in the instruction on the third prong were wrong because the third prong of malice can be satisfied only by proof of a plain and strong likelihood of death. *Commonwealth* v. *Fuller,* 421 Mass. 400, 412 (1995), and cases cited. The errors in the use of "grievous bodily harm" related only to the third prong of malice, and the Commonwealth's theories of murder in the first degree were premeditation and felony murder. Thus, the error in defining the third prong of malice was irrelevant to the conviction, as the third prong does not apply to the theories on which the jury were instructed on murder in the first

degree. *Id. Commonwealth* v. *Judge*, 420 Mass. 433, 437 (1995). The judge's instruction on malice aforethought did not create a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Torres*, 420 Mass. 479, 486 (1995); *Commonwealth* v. *Eagles, supra.*

3. *Hearsay testimony.* The defendant argues that the judge erred in permitting a witness to testify over his objection to statements made by the defendant in a laundromat two months prior to the shooting, where he told the witness that, "if he couldn't find [his] brother, he has a problem with [him]." The judge permitted the testimony under the state of mind exception to the hearsay rule. The judge instructed the jury that the evidence was to be admitted solely against the defendant Brooks for the limited purpose of showing his state of mind or the relationship between the defendant and the witness.[3]

The state of mind exception to the hearsay rule allows the admission of extrajudicial statements to show the state of mind of the declarant if it is relevant to a material issue in the case. *Commonwealth* v. *Borodine*, 371 Mass. 1, 7 (1976), cert. denied, 429 U.S. 1049 (1977). Evidence of a hostile relationship between a defendant and a witness is relevant to the defendant's state of mind and motive. See *Commonwealth* v. *Todd*, 394 Mass. 791, 798 (1985). Although the Commonwealth is not required to prove that the defendant had a motive for committing a crime, if there is evidence of motive, that evidence is admissible. *Commonwealth* v. *Borodine, supra* at 8. The Commonwealth presented the defendant's statements as evidence that the defendant was angry at the witness. Although the witness was not a victim listed in the indictments in this case, he was on the porch when the shooting began and his testimony indicates some motive for the shooting. Whether such evidence occurred at a time too remote from the crime to be of probative value is a decision left largely to the discretion of the judge. *Commonwealth* v. *Todd, supra.* There was no error.

The defendant's brief contains a final assertion that "flight

[3]The judge gave the following limiting instruction: "Ladies and gentlemen, I will admit this testimony against the defendant Brooks alone, not against the defendant Hamilton, and I admit it for a very limited purpose, for you to consider the relationship or state of mind of the defendant Brooks in regard to this particular witness on the stand."

which may be considered as consciousness of guilt is not enough alone, to convict a defendant." Then he states that this is so very basic as to require no further argument. The statement which may be true in the abstract has no application here where there was considerable other evidence to implicate the defendant in this crime.

We have also reviewed the entire record as is required by G. L. c. 278, § 33E, and we perceive no reason to order a new trial or order the entry of a lesser degree of guilt.

*Judgments affirmed.*