COMMONWEALTH *vs.* ARTHUR BLAKE
(and thirty-seven companion cases[1]).

Suffolk. May 5, 1998. - July 22, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Confrontation of witnesses. *Armed Assault with Intent to Murder. Joint Enterprise. Evidence,* Joint enterprise. *Accessory and Principal.*

At a criminal trial in which none of the three codefendants testified, the admission in evidence of one defendant's statements to police and the other two defendants' testimony before the grand jury, none of which expressly implicated the other defendants, did not violate the confrontation clause of the Sixth Amendment to the United States Constitution and any harm was cured by the judge's repeated, forceful instructions to consider each statement only against the defendant who made it. [59-63]

Evidence, including circumstantial evidence, at the trial of indictments for armed assault with intent to murder on a theory of joint venture was sufficient to warrant the jury's conclusion that the defendant shared the criminal intent of his codefendant. [63-64]

At the trial of codefendants on numerous indictments for assault and battery by means of a dangerous weapon and armed assault with intent to murder, arising out of a shooting spree on a crowded street, the evidence warranted the jury's conclusion that one defendant had acted in concert with his companions and was sufficient to warrant findings of guilty on a theory of joint venture. [64-65]

INDICTMENTS found and returned in the Superior Court Department on November 12, 1993.

The cases were tried before *Elizabeth B. Donovan,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for Damon Brown.

*Margaret G. Barmack* for Arthur Blake.

*Kristine Luongo Tammaro,* Assistant District Attorney, for the Commonwealth.

[1]Nineteen against Damon Brown and eighteen against Arthur Blake.

LYNCH, J. The defendants' convictions of numerous counts of assault and battery by means of a dangerous weapon and armed assault with intent to murder arose out of their participation in a shooting spree that occurred at an outdoor festival in Franklin Park in the Dorchester section of Boston. On appeal, each defendant challenges the admissibility of the other's statements and of statements made by a third codefendant.[2] In addition, the defendant Blake argues that the trial judge erred in denying his motion for a required finding of not guilty of armed assault with intent to murder because, he argues, there was no evidence that he acted with intent to kill. Brown argues that the judge committed reversible error by instructing the jury that he could be convicted on a theory of joint venture because, he claims, the evidence tended only to show that he was the principal. We transferred the cases here on our own motion and affirm.

1. *Facts.* We set forth the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with certain issues raised. *Commonwealth* v. *Payne,* 426 Mass. 692, 693 (1998). On August 28, 1993, the defendants attended a "Caribbean Festival" and were part of the large crowd gathered in Franklin Park and on nearby streets. During the course of the festivities taking place at the intersection of Blue Hill Avenue and Angell Street, the defendants shot and injured several people who had been part of the crowd. Identification of the shooters was the central issue at trial.

One of the victims had attended the festival and was leaving along Blue Hill Avenue by bicycle with a friend. Near the intersection of Blue Hill Avenue and Angell Street, he saw Brown suddenly reach toward him in an attempt to grab a gold chain from his neck.[3] The victim, still on the bicycle, pulled away from Brown, who then drew an automatic pistol and started shooting at him. As the victim was running away from Brown across Blue Hill Avenue, he heard a series of rapidly fired shots, then a pause, then a second round of shots, and was struck on his right heel. The victim heard approximately five more shots fired after he was wounded.

The victim's friend saw Brown push the victim off his

---

[2] A third defendant was acquitted at trial and is not a party to this appeal.

[3] The victim recognized Brown as someone who attended his high school and identified him at trial. The victim did not pinpoint the precise time of day the shooting occurred. He described the lighting as "[not] dark or . . . light, bright light. [The lighting] was medium."

bicycle,[4] pull out a gun, and fire in the victim's direction. He also saw two other individuals, standing next to Brown, who were also shooting across Blue Hill Avenue. As he looked for the victim, he saw Brown with two other people standing near a liquor store. He identified the third codefendant as being one of the two shooters who had been firing across Blue Hill Avenue.

A passenger on a bus saw Brown fighting with someone "about [a] chain," and then pull out a gun. She saw Brown shooting toward Harvard Street, the direction in which the first victim had been running. As the shooting continued, she saw Blake on Blue Hill Avenue with a gun raised, shooting across the street. As the passenger left the bus, she saw Blake, Brown, and several others running through a passageway in the Franklin Hills Avenue housing complex.

Another victim heard between fifteen and twenty shots coming from different directions marked by different sounds. She stated that the shot that hit her came from the corner of Angell Street and Blue Hill Avenue.

A third victim was shot while walking across the median strip of Blue Hill Avenue near a laundromat. A fourth victim, awaiting a bus on Blue Hill Avenue opposite the laundromat, heard gunshots, and realized he had been shot.

Another victim heard nine or ten gunshots near Angell Street and was shot in the right leg while attempting to find safety inside a restaurant. He also recalled that the gunshots fired sounded as if they came from different guns.

The police recovered several cartridges on the street. They found seven .45 caliber cartridges fired from the same weapon that were grouped together on Angell Street near the corner of Blue Hill Avenue, thirteen nine millimeter cartridges which were fired by the same weapon, and one copper jacket that probably came from a nine millimeter gun.

The first victim testified that he saw Brown with a chrome automatic gun. The victim's friend described the gun that Brown was firing as a chrome automatic gun with a brown wooden handle.

2. *Codefendants' statements.* At their joint trial, the Commonwealth introduced, over the defendants' objections, Brown's statements to police, as well as the grand jury testimony of both

[4]The victim's friend recognized Brown as being a student from West Roxbury High School, the same school he and the victim attended.

Blake and the third codefendant. The defendants claim that, because neither they nor the third codefendant testified at trial, the admission of these statements violated their rights under the Sixth Amendment to the United States Constitution to confront adverse witnesses. We disagree.[5]

Where a nontestifying codefendant's statement " 'expressly implicate[s]' the defendant, leaving no doubt that it would prove to be 'powerfully incriminating,' " the confrontation clause of the Sixth Amendment has been offended, notwithstanding the judge's instructions to consider the statement only against the codefendant. *Commonwealth* v. *James*, 424 Mass. 770, 782 (1997), quoting *Richardson* v. *Marsh*, 481 U.S. 200, 208 (1987). A codefendant's statement which becomes incriminating "only when linked with evidence introduced later at trial," however, generally does not offend the Sixth Amendment, so long as an adequate limiting instruction is given. See *Richardson* v. *Marsh*, *supra* at 206, 208; *Commonwealth* v. *Keevan*, 400 Mass. 557, 570 (1987); *Commonwealth* v. *LeBlanc*, 364 Mass. 1, 8-9 (1973). Such "contextual incrimination" develops, and the judge's instructions become ineffective, "only where the circumstances of the case and the nature of the codefendant's statement so obviously implicate the defendant in the crime itself as virtually to constitute direct incrimination." *Commonwealth* v. *James*, *supra* at 783. See *Gray* v. *Maryland*, 523 U.S. 185, 196 (1998) (Sixth Amendment offended where non-testifying codefendant's statements "involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial").

In the present case, the judge correctly concluded that the statements were not sufficiently inculpatory to offend the defendants' Sixth Amendment rights. None of the statements

[5]As an initial matter, Brown contends that the judge erred in admitting the statements as consciousness of guilt evidence. Statements may be properly admitted as evidence of consciousness of guilt where there is other evidence tending to prove the falsity of the statements. See *Commonwealth* v. *Robles*, 423 Mass. 62, 71 (1996); *Commonwealth* v. *Merola*, 405 Mass. 529, 547 (1989). Here, the Commonwealth presented three eyewitnesses who testified that Brown was brandishing a weapon at the crime scene at the time of the shootings. Likewise, eyewitness testimony placed Blake and the third codefendant at the crime scene, weapons in hand. This evidence tended to establish the falsity of the defendants' respective claims to have been at a party continuously until at least midnight. The statements were therefore properly admitted as consciousness of guilt evidence.

expressly implicated either defendant in the crimes charged. According to Blake's grand jury testimony, Brown was in the third codefendant's apartment at the time of the shootings, and only left there at around 10 P.M. to "smoke some herb" with other partygoers on the apartment building's roof. Similarly, Brown's statement to police indicated merely that Blake had arrived at the third codefendant's apartment at 7 P.M. It suggests nothing about Blake's whereabouts at the time of the shootings. Finally, according to the third codefendant's grand jury testimony, both Blake and Brown were in the third codefendant's apartment at 7:15 P.M., and then left the party together "around 9:00, 9:30." No mention was made of their activities after leaving the party. Cf. *Commonwealth* v. *Adams*, 416 Mass. 55, 57 (1993) (defendant's confrontation right violated where judge admitted nontestifying codefendant's statement which "placed on the [defendant] blame for masterminding the robbery, providing the gun and the bullets, test-firing the gun, and shooting the victim"); *Commonwealth* v. *Dias*, 405 Mass. 131, 134-135, 137 (1989) (allowance of nontestifying codefendant's statement which "contended that the other codefendant had suggested the robbery of [the victim's] house and was responsible for [the victim's] murder" violated other codefendant's confrontation right).

Nor did the statements, even taken in context with the Commonwealth's other evidence, sufficiently inculpate the defendants. The defendants contend that the statement of the third codefendant that the defendants left the party between 9 and 9:30 P.M. was contextually incriminating because it conflicted with each defendant's claim that he remained at the party until at least midnight and thus was misidentified as an assailant. Although inconsistent with each defendant's position, the statement of the third codefendant did not "so obviously implicate the defendant[s] in the crime itself as virtually to constitute direct incrimination." *Commonwealth* v. *James, supra* at 783. To the contrary, evidence adduced at trial established that the shootings may have occurred as early as 8 or 8:15 P.M. — or inferentially shortly before 8:55 P.M.[6] The statement of the third codefendant was that the defendants were in his apartment at least until 9 P.M. That statement, therefore, was exculpatory in

---

[6]The victims testified that the shootings occurred at or before 8 P.M. One police officer testified that he responded to a call regarding shots fired at 8:15 P.M. A second officer testified that at about 8:30 P.M. he received a radio report

that it placed the defendants away from the immediate crime scene at the time of the shootings. *Id.* (concluding no contextual incrimination where there were "discrepancies" between non-testifying codefendant's statement and other evidence of incident). See *Commonwealth* v. *Hamilton,* 411 Mass. 313, 321 (1991). Even if we take the statement of the third codefendant to suggest that the defendants' whereabouts were unknown to him around the time of the shootings, the defendants' argument is not advanced. Concluding that the defendants were therefore involved in the shootings during that time would have required the jury to draw a series of inferences, none of which "a jury ordinarily could make immediately, even were the [statement] the very first item introduced at trial." *Gray* v. *Maryland, supra* at 196.[7] Consequently, any harm the defendants may have suffered because of this statement was cured by the judge's repeated, forceful instructions to consider each statement only against the defendant who made it.[8] See *Commonwealth* v.

about shots fired. Finally, a third officer received a dispatch at 8:55 P.M. to assist a victim of the shootings.

[7]In *Gray* v. *Maryland,* 523 U.S. 185, 196 (1998), the United States Supreme Court emphasized that, in deciding whether a nontestifying codefendant's statement contextually incriminates the defendant, courts must look to the "the kind of, not the simple fact of, inference" which the jury may reasonably draw from the statement. Otherwise, the Court reasoned, *id.* at 195, statements using "first names, nicknames, [or] descriptions as unique as the 'red-haired, bearded, one-eyed man-with-a-limp,' " which clearly identified the defendant, would offend the Sixth Amendment merely because they required the jury to draw an inference in order to connect the defendant with the crime. See *Bruton* v. *United States,* 391 U.S. 123 (1968). In *Gray* v. *Maryland, supra,* the Court concluded that, where the codefendant's confession deleted only the defendant's name, the defendant's confrontation right had nonetheless been violated, in part, because the statement involved inferences about the defendant's participation "that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial."

[8]After the testimony recounting Brown's statement to police, the judge immediately instructed the jury that the statement "[is] only being admitted as to [Brown] and not as to the other two defendants." Similarly, prior to the reading into evidence of Blake's and the third codefendant's grand jury testimony, the judge told the jury, "But at this point in time, any evidence that's being introduced about statements made by [the third codefendant] are not admissible as to the other two defendants, and the statements made at the grand jury, or otherwise, by [Blake] are also not admitted as against the other two defendants, [Brown] and [the third codefendant]." Finally, during his main jury charge, the judge reiterated that the statements "are personal to the person who made them. They cannot be used as to the other defendants. So,

*James, supra; Commonwealth* v. *Keevan,* 400 Mass. 557, 571 (1987).

3. *Blake's conviction of assault with intent to murder.* Blake argues that there was insufficient evidence to show that he was guilty of armed assault with intent to murder based on a theory of joint venture. The judge correctly instructed on joint venture and Blake does not argue otherwise. See *Commonwealth* v. *Brooks,* 422 Mass. 574, 576 (1996). In order for a defendant to be convicted of joint venture, there must be evidence that the defendant was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Id.* at 576, quoting *Commonwealth* v. *Longo,* 402 Mass. 482, 486 (1988). The evidence was sufficient against Blake for the jury to have found each of these elements beyond a reasonable doubt. See *Commonwealth* v. *Brooks, supra* at 576. Blake concedes that the Commonwealth's evidence placed him at the scene of the crime. See *id.* In addition, testimony at trial demonstrated that Blake was not merely present at the scene, but that he had been firing a gun at approximately the same time as Brown and the other shooter.

However, Blake contends that there was insufficient evidence that he knew of or shared Brown's intent to kill or grievously to injure the victims. See *Commonwealth* v. *Brooks, supra* at 577. He argues that the evidence was insufficient because the Commonwealth offered no evidence tending to show that he knew the first victim prior to the shooting, and thus that the Commonwealth failed to show that Blake had any "animus" toward the first victim. The Commonwealth was not required to prove that Blake waged a vendetta against the victim, as there was sufficient evidence to show that Blake shared Brown's intent. *Id.* The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable. *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980), and cases cited.

The Commonwealth presented evidence showing that Blake

when you are considering the statement of [Brown], it is applied only to Brown, period, not to [the third codefendant] or [Blake]. The same thing when you are considering the statement of [Blake]. That cannot be used as to [Brown] or [the third codefendant]. The same with [the third codefendant]. His statement cannot be used against [Brown or Blake]."

was standing in close proximity to Brown and was shooting across Blue Hill Avenue at the same time as Brown. Blake had been seen with a gun, and the police had recovered cartridges near that location. From this evidence a rational jury could have inferred not only that Blake was available and willing to help Brown, but also that he, in fact, did so. See *Commonwealth* v. *Williams*, 422 Mass. 111, 121 (1996). Furthermore, Blake ran from the scene of the crime with Brown and others. Joint venture may be proved by circumstantial evidence, including that the defendant was among those fleeing the scene. *Id.*, citing *Commonwealth* v. *Santos*, 402 Mass. 775, 787 (1988).

Furthermore, Brown had already begun shooting when Blake, nearby, drew his weapon and shot across Blue Hill Avenue. It is unnecessary to discern what Blake's motivation was in drawing his gun when the circumstantial evidence strongly supported the conclusion that Blake shared Brown's criminal intent. See *Commonwealth* v. *Brooks*, *supra* at 576; *Commonwealth* v. *Williams*, *supra*.

4. *Brown as a joint venturer.* Brown argues he could not be properly convicted as a joint venturer because the evidence tended to show that he acted only as a principal. See *Commonwealth* v. *Green*, 420 Mass. 771, 779 (1995). Brown argues that, because the Commonwealth presented evidence that he had initiated the shots against the first victim, there was insufficient evidence showing that he was, by agreement, willing and able to assist in the shooting. *Id.* We disagree. Although the Commonwealth's evidence demonstrated that Brown's shooting precipitated the other shots fired by Blake and the third defendant, the Commonwealth also introduced sufficient evidence to support a finding of his guilt as a joint venturer.

The Commonwealth's evidence warranted a finding that, although Brown was the initial shooter, he also acted in concert with Blake and possibly others when he fired a barrage of gunshots into the crowd. There was sufficient evidence supporting each element of Brown's guilt on a theory of joint venture. See *Commonwealth* v. *Brooks*, *supra* at 576. Brown fired his gun at the first victim, and then, after being joined in the shooting by Blake, and others, again fired into the crowd.[9] Brown, Blake, and others were seen running away from the scene of the crime together. Evidence of a prior agreement between Brown

[9]Given that it was inferable that Brown saw Blake with his weapon drawn and fired, we reject Brown's argument that there was insufficient knowledge

and the others is not required because Brown's continued firing after being joined by others supports the inference that Brown, Blake, and the other shooters shared the intent to aid each other and to engage in a shooting spree on the crowded streets near Blue Hill Avenue.[10] *Commonwealth* v. *Brooks, supra* at 577. We conclude that the jury were warranted in inferring that Brown acted in concert with his companions. *Id.*

*Judgments affirmed.*

---

that he was aware that Blake was armed. See *Commonwealth* v. *Williams*, 422 Mass. 111, 121 (1996).

[10]We note the argument raised in Brown's reply brief that there was insufficient evidence showing that Brown engaged in any shooting after the initial shots were fired against the first victim. Brown argues that there was no evidence on this issue because the Commonwealth relies on testimony that was elicited during a voir dire. We do not rely on the voir dire testimony. The evidence that Brown raised his gun toward the victim after being joined by Blake and the others was sufficient.