**Arthur BLAKE, Petitioner,**

v.

**Michael T. MALONEY, Respondent.**

**No. Civ.A. 99–11598–WGY.**

United States District Court, D. Massachusetts.

March 2, 2001.

Arthur Blake, Shirley, MA, Pro se.

Kenneth E. Steinfield, Office of the Attorney General Criminal Bureau, Joseph T. Thai, Attorney General's Office Criminal Bureau, Boston, MA, for Respondent.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### INTRODUCTION

The Petitioner, Arthur Blake ("Blake"), brings this Petition for a writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2241. · The Petition attacks Blake's conviction in Suffolk Superior Court on six counts of armed assault with intent to murder, six counts of assault and battery with a dangerous weapon, and one count of carrying a firearm without a li-

cense. Blake currently is serving an aggregate term of thirty-six to forty years in state custody. Pet. ¶¶ 3–4.

Blake's grounds for appeal rest on two alleged violations of the federal Constitution. First, he contends that his conviction was in violation of his right to confrontation under the Sixth and Fourteenth Amendments to the United States Constitution because the trial court admitted the hearsay statements of codefendants who did not testify. Second, he claims that his rights to due process and a fair trial allegedly were undermined when the trial court denied his motion for a required finding of not guilty on the charges of armed assault with intent to murder on a joint venture theory. Blake's state law remedies have been exhausted, *see Commonwealth v. Blake*, 428 Mass. 57, 696 N.E.2d 929 (1998), and the Petition is properly before this Court.

## BACKGROUND

On February 9, 1995, Blake and Damon Brown ("Brown") were convicted of shooting and injuring several people gathered at a "Caribbean Festival" on August 28, 1993. Pet. ¶ 2; *Blake*, 428 Mass. at 58, 696 N.E.2d 929. The events of that night are described fully in the opinion of the Supreme Judicial Court. *Blake*, 428 Mass. at 58–59, 696 N.E.2d 929. The factual recitation below is limited to the information necessary for the disposition of the Petition.

### A. *The Testimony*

At the joint trial, over Blake's repeated objections, the Commonwealth introduced as admissions against the individual speakers[1] Brown's statements to the police as well as the grand jury testimony of both Blake and a third codefendant, Angel Rentas ("Rentas").[2] None of the codefendants actually testified at trial. The statements involved each defendant's whereabouts at the time of the shooting. Although there was some confusion regarding when the shooting began, the time was largely narrowed to a range between 8:00 and 8:30 p.m., with one account placing it as late as 8:55 p.m. In his statement, Brown indicated that he attended the festival with Blake and Rentas during the afternoon. Resp. Ex. 1, at 6. He said that he left the festival in the early evening, however, to attend a birthday party at Rentas' apartment. He arrived at Rentas' home at approximately 7:00 p.m. and stayed there until one or two o'clock in the morning. *Id.* At the time of this statement's admission, the justice of the Superior Court gave an appropriate limiting instruction to the jury.

Rentas, in his grand jury testimony, recounted a slightly different version of events. He stated that he returned to his apartment at approximately 7:00 p.m. to discover a surprise birthday party. *Id.* at 7. According to Rentas, Brown and Blake were already there when he arrived. Rentas reported that he stayed in the house all night, but that Brown and Blake left together around 9:00 or 9:30 p.m. Again, the trial judge instructed the jury that the testimony was being offered for a limited purpose and was not admissible as to the other defendants. *Id.*

In contrast, Blake testified before the grand jury that he was with his girlfriend until 6:30 p.m. and that he went to Rentas' birthday party at 7:30 or 8:00 p.m. He reported that Brown was already at the party when he arrived. Further, he stated

---

1. *See* William G. Young, John R. Pollets & Christopher Poreda, *Massachusetts Evidentiary Standards* 195 (1999) (Evidentiary Standard 801[d][2][A]).

2. Rentas was acquitted at trial.

that he stayed at the party until 12:00 or 12:30 a.m. and left by himself. *Id.* at 8.

### B. *The Joint Venture Theory*

The facts show that Brown instigated the shooting spree when he attempted to grab a necklace from the neck of Kerry Davis, one of the eventual shooting victims. Davis ran away from Brown, who then pulled out an automatic pistol and began firing at Davis. Davis fled, but was hit in the heel of his right foot after four or five shots. After he was wounded, the shooting continued. Witnesses reported as many as twenty shots fired. A witness placed Blake at the scene with a gun raised, shooting into the crowd gathered for the festival. Both Brown and Blake were seen fleeing the scene.

## DISCUSSION

### A. *State Custody and AEDPA*

It is important to note the changes that the Antiterrorism and Effective Death Penalty Act ("AEDPA") has wrought in the review of state court convictions. Prior to AEDPA's passage, a federal court's exercise of habeas corpus jurisdiction did not require that it pay any special heed to the underlying state court decision. *Brown v. Allen,* 344 U.S. 443, 458, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *O'Brien v. Dubois,* 145 F.3d 16, 20 (1st Cir.1998). The recent AEDPA amendments to section 2254 now direct the reviewing federal court to use the state court decision as a guide. *O'Brien,* 145 F.3d at 20. Indeed, only if the state court decision violates section 2254(d) can habeas relief be granted.

28 U.S.C. § 2254(d) provides that:

An application for writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* Blake's Petition does not mention the AEDPA amendments nor their potential impact on his Petition. A liberal reading of the Petition suggests that Blake relies on both section 2254(d)(1) and (d)(2). First, Blake claims that his state court conviction violated the Sixth, Fifth and Fourteenth Amendments to the United States Constitution. Second, Blake argues that the evidence presented in the trial court was insufficient to support his conviction as a joint venturer.

The Court need not belabor the point, however. The AEDPA amendments have little to no impact on the substantive claims brought by Blake. Whether this Court applies the pre-AEDPA or post-AEDPA construct, Blake's Petition fails.

### B. *Admission of Codefendants' Statements*

Blake argues that his Sixth Amendment right to confront adverse witnesses was violated when the trial court admitted the statements of his codefendants. The trial justice concluded that the statements were not sufficiently inculpatory to offend Blake's constitutional rights, and the Supreme Judicial Court affirmed. *Blake,* 428 Mass. at 60, 696 N.E.2d 929. Blake contends that both courts erred in their analysis.

 Under the Sixth Amendment, a criminal defendant has the right to con-

front the witnesses against him. In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court recognized that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at trial. *Id.* at 135–36, 88 S.Ct. 1620. Nevertheless, the right to confrontation is not absolute. A codefendant's statement, accompanied by an appropriate limiting instruction that becomes only peripherally incriminating when linked with evidence introduced later at trial, generally does not offend the Sixth Amendment. *Richardson v. Marsh,* 481 U.S. 200, 208, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

■ In *Blake,* the Supreme Judicial Court applied these established principles to the facts before it. First, neither Brown nor Rentas expressly implicated Blake in the crime. Moreover, both statements placed Blake at Rentas' home at the time of the shootings. Even when combined with other evidence presented at trial, the statements fail to implicate Blake in the crime. The statements were neither directly nor inferentially incriminating. In addition, any alleged harm suffered by Blake because of these statements was cured by the instruction to consider each statement solely against the defendant who made it. This aspect of Blake's argument must fail.

### C. *Joint Venture Theory*

■ Blake next argues that there was insufficient evidence to show that he was guilty of armed assault with intent to murder based on a joint venture theory. He fails to advance any evidence of an unreasonable determination of the facts, however, as required by section 2254(d)(2). To be convicted of a joint venture in Massachusetts, a defendant must be "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth v. Longo,* 402 Mass. 482, 486, 524 N.E.2d 67 (1988). Blake concedes that the evidence at trial demonstrated that he was present at the scene and that he was firing a gun at approximately the same time as Brown. He claims, however, that there was neither direct evidence nor a basis on which the jury could infer that he had intended to aid or participate in Brown's attack on Davis. Pet. ¶ 12B.

■ To support his conviction as a joint venturer in an armed assault with intent to murder, the Commonwealth was required to prove that Blake committed assault, that he was armed with a dangerous weapon, that he had specific intent of murdering Davis, and that he acted with malice. Mass. Gen. Laws ch. 265, § 18; *Commonwealth v. Ennis,* 398 Mass. 170, 173, 497 N.E.2d 950 (1986). Blake contests the sufficiency of the evidence of his malicious intent.

■■ The inferences drawn by a jury, however, need only be reasonable and possible, and need not be necessary or inescapable. *Commonwealth v. Casale,* 381 Mass. 167, 173, 408 N.E.2d 841 (1980). The evidence showed that Blake was standing near Brown and was firing his weapon at the same time as Brown, thus establishing an inference that Blake was willing to aid in the venture. *Commonwealth v. Williams,* 422 Mass. 111, 121, 661 N.E.2d 617 (1996). Furthermore, Blake fled the scene with Brown, and joint venture may be proven by such circumstantial evidence. *Commonwealth v. Santos,* 402 Mass. 775, 787, 525 N.E.2d 388 (1988). In addition, the fact that Blake began shooting shortly after Brown fired his gun supports the conclusion that Blake

shared Brown's criminal intent. *Commonwealth v. Brooks,* 422 Mass. 574, 576–77, 664 N.E.2d 801 (1996).

There is no evidence that Blake's conviction was obtained in violation of his right to due process under the Fifth and Fourteenth Amendments. The trial justice did not err when he allowed the joint venture theory to go to the jury. There was adequate evidence for the jury to infer that Blake intended to aid and participate in the crime.

## CONCLUSION

Based on the foregoing, Blake's Petition for a Writ of Habeas Corpus [Docket no. 3] is DENIED.