Ramona Hernandez and her husband, Rafael Henriquez, were arrested on March 23, 2012, culminating a joint operation (referred to as Operation Persistent Rain) between the Massachusetts State Police and United States Immigration and Customs Enforcement to dismantle an East Boston sex trafficking ring. A jury later found Hernandez and Henriquez each guilty of sex trafficking, deriving support from prostitution, owning or managing a place for unlawful sexual intercourse therein, and keeping a house of ill fame in connection with their roles as principals in the sex trafficking scheme.
In this appeal, Hernandez and Henriquez allege error in the trial judge's denial of their motion for a Franks hearing, see Franks v. Delaware, 438 U.S. 154 (1978), and renewed motion to suppress, and claim that the judge improperly limited the scope of their cross-examination of sex worker witnesses. They also argue that the sex trafficking statute, G. L. c. 265, § 50, is unconstitutionally vague, though for different reasons. Hernandez argues separately that the judge committed a number of errors at trial. Henriquez argues that the judge erred in denying his motion to suppress evidence based on the insufficiency of the Commonwealth's warrant affidavit. He also claims error in the denial of his motion to dismiss an indictment based on insufficient evidence before the grand jury. For the reasons stated below, we affirm the judgments.
Discussion. 1. Constitutionality of G. L. c. 265, § 50. a. Hernandez's claim. Hernandez argues that the sex trafficking statute, G. L. c. 265, § 50, is unconstitutionally vague because it criminalizes the same conduct already proscribed by existing statutes. Specifically, she claims that one who acts as a joint venturer in committing the crimes of managing a place for unlawful sexual intercourse, G. L. c. 272, § 6, or keeping a house of ill fame, G. L. c. 272, § 24, has no notice of whether he or she will be prosecuted under those statutes or under the more punitive sex trafficking statute.
"A statute violates due process and is void for vagueness when individuals of normal intelligence must guess at the statute's meaning and may differ as to its application, thus denying them fair notice of the proscribed conduct." Commonwealth v. Disler, 451 Mass. 216, 223 (2008). "Proscribed conduct, however, is not always capable of precise legal definition." Commonwealth v. Reyes, 464 Mass. 245, 249 (2013). A statute's language will be constitutionally adequate if it "conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." Commonwealth v. Adams, 389 Mass. 265, 270 (1983) (quotation omitted).
Here, the differences in the conduct prohibited by the statutes cited by Hernandez and the sex trafficking statute are plain. Both § 6 and § 24 of G. L. c. 272 punish those who knowingly own or maintain a place wherein persons engage in unlawful sexual intercourse for money. See Commonwealth v. Mullane, 445 Mass. 702, 714-716 (2006). In contrast, under G. L. c. 265, § 50, one who knowingly enables or causes another to engage in commercial sexual activity need not own or manage the place where such conduct occurs in order to be convicted of sex trafficking. Thus, although Hernandez argues that G. L. c. 265, § 50, criminalizes essentially the same conduct as other existing statutes, it plainly does not.[3]
b. Henriquez's claim. Henriquez's argument that the sex trafficking statute is unconstitutionally vague because it lacks the element of force or coercion similarly lacks merit, the Supreme Judicial Court already having considered this precise issue in Commonwealth v. McGhee, 472 Mass. 405 (2015).[4] In that case, the court held that "because G. L. c. 265, § 50(a ), is sufficiently clear and definite, it did not violate the defendants' rights to due process under the Fifth and Fourteenth Amendments and art. 12. The words of the statute have commonly accepted and readily understood meanings in the English language, and the phrase 'commercial sexual activity' is amply defined in G. L. c. 265, § 49. The statutory language provided fair notice to the defendants that the very conduct in which they engaged was the kind of conduct that the Legislature intended to prohibit and punish." (Footnote omitted.) Id. at 415. There was no error.
2. Motion for Franks hearing and renewed motion to suppress. There was no error in the denial of the defendants' request for a hearing pursuant to Franks v. Delaware, 438 U.S. 154, or in the denial of their renewed motion to suppress. A hearing on a Franks motion is required upon " 'a substantial preliminary showing' that the affiant made a material, false statement either intentionally or with reckless disregard for the truth." Commonwealth v. Winquist, 87 Mass. App. Ct. 695, 705 (2015), S.C., 474 Mass. 517 (2016), quoting from Commonwealth v. Ramos, 402 Mass. 209, 215 (1988). In addition, at least in the case of reckless falsehood, the false statement must be necessary to the existence of probable cause. Commonwealth v. Nine Hundred & Ninety-two Dollars, 383 Mass. 764, 767-768 (1981). The defendants made no such showing.
We agree with the judge, who found "nothing to suggest that there was an intentional or reckless misstatement by the [S]tate troopers." The defendants failed to demonstrate how what we see as minor inconsistencies between the search warrant affidavit and the testimony at trial, resulted from intentional or reckless police behavior. Furthermore, none of the alleged inconsistencies in the search warrant affidavit is necessary to the determination of probable cause. As such, there was no error in the denial of the defendants' request or motion.
3. Limitation on cross-examination. While a criminal defendant is entitled to a reasonable cross-examination of witnesses against him, that right of confrontation is not absolute. Commonwealth v. Barnes, 399 Mass. 385, 393 (1987). Generally, a trial judge "has broad discretion to limit cross-examination of a witness." Commonwealth v. Mercado, 456 Mass. 198, 203 (2010) (quotation omitted). To determine whether the judge abused this broad discretion, "we weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination." Commonwealth v. Miles, 420 Mass. 67, 72 (1995).
Here, there is no question that the direct testimony of the sex worker witnesses was vital to the Commonwealth's case. Regarding their sex worker history, the judge ruled that their testimony admitting they made the initial contact in order to earn money as sex workers sufficiently covered the topic. She also determined that cross-examination about this history would "devalue them and their integrity to the point of perhaps tempting the jury to not treat this evidence with the proper seriousness." This was well within the judge's discretion to limit cross-examination "based on concerns about ... harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." Commonwealth v. Johnson, 431 Mass. 535, 540 (2000) (quotation omitted). Furthermore, because use of force or coercion is not an element of the sex trafficking statute, the defendants' aim to show the witnesses' voluntary involvement in the sex trafficking scheme is irrelevant. See Commonwealth v. McGhee, 472 Mass. at 427. Thus, there was no error.
4. Hernandez's separate claims. a. Motion for severance. Hernandez argues separately that the judge erred in denying her motions to sever the trials. Hernandez maintains that severance was necessary because the admission in evidence of her husband's confession violated Bruton v. United States, 391 U.S. 123, 137 (1968), holding that the introduction at a joint trial of a nontestifying codefendant's statement, which names and incriminates the other defendant, violates that defendant's right to confront her accusers under the Sixth Amendment to the United States Constitution.
" 'Where a nontestifying codefendant's statement "expressly implicate[s]" the defendant, leaving no doubt that it would prove to be "powerfully incriminating," the confrontation clause of the Sixth Amendment ... has been offended,' notwithstanding any limiting instruction by the judge that the jury may consider the statement only against the codefendant." Commonwealth v. McAfee, 430 Mass. 483, 488 (1999), quoting from Commonwealth v. Blake, 428 Mass. 57, 60 (1998). However, where a codefendant's statement becomes incriminating only when taken in context with other evidence adduced at trial, a limiting instruction will generally suffice to cure a violation of the defendant's confrontation rights. Commonwealth v. Blake, supra. See Richardson v. Marsh, 481 U.S. 200, 208-209 (1987). A limiting instruction is ineffective "only where the circumstances of the case and the nature of the codefendant's statement so obviously implicate the defendant in the crime itself as virtually to constitute direct incrimination." Commonwealth v. Blake, supra, quoting from Commonwealth v. James, 424 Mass. 770, 783 (1997).
At the judge's direction, the parties' redacted Henriquez's statement, excluding any reference to Hernandez's involvement in the crimes alleged. The trial judge also instructed the jury, both at the time of the statement's admission and twice during her final charge, that they could consider the statement solely as evidence against Henriquez, and not against any other defendant. Nevertheless, Hernandez argues portions of the redacted statement implied the involvement of another individual, whom the jury necessarily inferred was Hernandez. These portions include Henriquez's statement that "we pay the gas, we pay the toll, we pay everything," and that his "wife" purchased the vehicle that police followed and from which they eventually seized evidence.
There was no Bruton violation. Where one defendant gives an account of his and a coventurer's commission of a crime, "it would be a rare case where the process of redaction did not leave behind some" reference to other persons. Commonwealth v. Rivera, 464 Mass. 56, 70 (2013). "The law is clear, however, that inferential incrimination can be properly cured by a limiting instruction, even in cases where the inference is more inculpatory than here." Ibid. See Commonwealth v. Vazquez, 462 Mass. 827, 841-844 (2012) ; Commonwealth v. Wilson, 46 Mass. App. Ct. 292, 297-298 (1999).
Henriquez's statements did not so obviously implicate Hernandez as to violate the Bruton rule. His statement that "we" pay for certain things came immediately after his claim that "it's a lot of people [running the business]," and could have been taken as referring to someone other than Hernandez. Similarly, Henriquez's references to "my wife" only implicated Hernandez when considered together with the marriage certificate entered in evidence, and only concerned an ancillary fact: that she purchased the vehicle driven by Henriquez. In addition, the judge gave forceful limiting instructions to the jury three times. Henriquez's redacted statement incriminates Hernandez only to the extent that the jury accepted the other evidence against her detailing her role within the sex trafficking operation. The admission of such a statement, which only implicates Hernandez circumstantially when combined with other evidence in the case, does not offend Bruton. Consequently, the judge did not abuse her discretion by admitting the redacted statement and denying Hernandez's motion to sever the trials.
b. Ineffective assistance. Hernandez argues that her counsel was ineffective for eliciting testimony that she declined to speak to the police. We review counsel's actions under the familiar standard set forth in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), that is, whether counsel's actions constituted "behavior ... falling measurably below that which might be expected from an ordinary fallible lawyer" and "whether [counsel's actions] likely deprived the defendant of an otherwise available, substantial ground of defence."
During his cross-examination of Trooper Cuevas, defense counsel asked whether he had any further contact with Hernandez after her arrest and booking. The trooper responded that he attempted to interview her, but "she didn't want to talk." Defense counsel later explained at sidebar that his intent was to demonstrate that the trooper's interactions with Hernandez were brief, in order to impeach his opinion that he heard Hernandez's voice on the wiretap recordings, and that he did not intend to elicit the trooper's answer. After some discussion, defense counsel asked the judge to give the curative instruction at the end of trial, so as not to draw attention to the trooper's statement. The next day, again during cross-examination, Special Agent Arnold testified that he briefly conversed with Hernandez during "an attempted interview." The judge immediately instructed the jury to disregard that statement.
We see no failure of counsel rising to the level of ineffective assistance. While Trooper Cuevas and Special Agent Arnold should not have testified as they did, see Commonwealth v. DePace, 433 Mass. 379, 382-383 (2001), defense counsel inadvertently elicited their statements as part of his reasonable trial strategy. The brief references to Hernandez's silence "bore no relationship to the premise of [her] defense." See Commonwealth v. Brum, 438 Mass. 103, 121 (2002). The judge also gave strong curative instructions, one immediately after one statement, and again during her jury charge. Most importantly, at no time during the trial did the prosecutor suggest that the jury should infer Hernandez's guilt because she declined to speak with the police. See Doyle v. Ohio, 426 U.S. 610, 618-619 (1976).
c. Contact between witness and juror. On the fifth day of trial, Trooper Cashman reported to one of the prosecutors that on the previous day he encountered a woman juror in the court house elevator, where they spoke briefly. The trooper reported to the judge that a juror jokingly asked him to say that he knew her to cause the judge to excuse her from the jury. Then realizing she was a juror in the instant case, he responded, "[T]rials can be interesting." The judge conducted a voir dire of the juror (no. 181), as well as three other jurors.[5] The judge asked the juror if she could continue to be fair and impartial and the juror responded affirmatively, emphasizing that the interaction with the trooper had nothing to do with the case. While the juror and trooper should not have conversed, the judge acted within her discretion when she concluded that the interaction was not prejudicial.
Hernandez argues that the judge erred by not questioning every juror in an individual voir dire as discussed in Commonwealth v. Jackson, 376 Mass. 790, 800-801 (1978). However, the court in that case held that a voir dire of the entire jury is required "when a claim of potentially extraneous influence on a jury is brought to the judge's attention" (emphasis added).[6] Id. at 800. If the judge determines, through questioning the jury collectively, that a juror has seen or heard extraneous material outside the record, "there must be individual questioning of that juror ... to determine the extent of the juror's exposure to the material and its effects on the juror's ability to render an impartial verdict." Id. at 800-801. Here, questioning the entire jury was unnecessary because Trooper Cashman identified the juror he spoke with, who in turn identified the only other jurors present. The judge then questioned these jurors individually, as required, made findings, and determined that each juror remained impartial. No further action was required, and the judge did not err in denying the motions for mistrial and to strike the trooper's testimony.
d. Jury instruction on identification. Hernandez's claim that the judge was required to instruct the jury on voice identification is without merit. The entirety of her argument is based on the Supreme Judicial Court's holding in Commonwealth v. Gomes, 470 Mass. 352, 376 (2015), wherein the court revised and updated the jury instruction that must accompany eyewitness identification testimony. However, in Gomes, decided more than a year after this trial, the court clearly stated that its holding was not retroactive. Ibid. Furthermore, aside from the "earwitness" identification, the Commonwealth linked Hernandez's voice to the recordings through other evidence.[7] Finally, despite arguing the issue in his closing argument, defense counsel never requested an identification instruction. There was no error.
e. English-reading jurors. It was not error for the judge to inquire whether prospective jurors could read English, and to dismiss a juror who had trouble understanding English. "A trial judge is allowed a broad range of discretion in the jury selection process." Commonwealth v. Barnoski, 418 Mass. 523, 530 (1994). While the Sixth Amendment guarantees the right of a criminal defendant to a jury selected from a fair cross-section of the community, "the States retain 'broad discretion' and 'remain free to prescribe relevant qualifications for their jurors.' " Commonwealth v. Acen, 396 Mass. 472, 479 (1986), quoting from Taylor v. Louisiana, 419 U.S. 522, 538 (1975). One ground for disqualification of prospective jurors is the inability to "speak and understand the English language." G. L. c. 234A, § 4. This requirement does not run afoul of the Sixth Amendment, as "[n]o court has ever held that 'non-English speaking persons' form a distinct or protected class." Acen, supra. Nor was it error for the judge to require that prospective jurors be able to read English, because those who are unable to read English are similarly not a protected class. See Commonwealth v. Olivo, 369 Mass. 62, 72 (1975). Thus, there is no merit to Hernandez's contention that the judge denied her a jury representing a cross-section of her community.[8]
5. Henriquez's separate claims. a. Denial of motion to suppress. Henriquez argues separately that the judge erroneously denied the defendants' motion to suppress in which they contended the affidavit filed in support of the wiretap warrant was insufficient. A wiretap warrant may issue only upon probable cause to believe that a designated offense has been, is being, or is about to be committed and that interception of communications would lead to evidence of that offense. Commonwealth v. Thorpe, 384 Mass. 271, 275 n.3 (1981). This probable cause determination requires that (1) a wiretap be conducted only in the investigation of organized crime, as reflected in the designated offenses of the statute, G. L. c. 272, § 99(A), as appearing in St. 1968, c. 738, § 1; and (2) the wiretap is necessary because "normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried," G. L. c. 272, § 99(E)(3). To establish necessity, "[t]he Commonwealth need not show that traditional investigative techniques were wholly unsuccessful or that the police had exhausted all other investigative procedures before filing its application for a warrant authorizing a wiretap." Commonwealth v. Fenderson, 410 Mass. 82, 83 (1991), quoting from Commonwealth v. Wilson, 405 Mass. 248, 250 (1989). Instead, "[a]n affidavit will be adequate if it indicates a reasonable likelihood that normal investigative techniques have failed in gathering evidence, or would fail if attempted." Id. at 83-84. In making this determination, the judge may draw from the wiretap warrants, their affidavits and applications, and all reasonable inferences drawn therefrom. Commonwealth v. Allen, 406 Mass. 575, 577-578 (1990). Affidavits supporting search warrants bear "a presumption of validity," and the defendant bears the burden of overcoming that presumption. Commonwealth v. John, 36 Mass. App. Ct. 702, 706 (1994), quoting from Franks v. Delaware, 438 U.S. at 171.
The affidavit submitted in support of the wiretap application provided a reliable basis to conclude that investigators attempted a number of other techniques[9] that failed to produce evidence against the top level of individuals controlling the operation, including Henriquez. To dismantle entirely the sex trafficking operation, investigators required evidence against its principals, which proved unobtainable through traditional methods. Therefore, there was no abuse of discretion in the denial of the motion to suppress.
b. Denial of motion to dismiss. Finally, Henriquez also argues that it was error to deny his motion to dismiss the indictment against him for sex trafficking because the evidence presented to the grand jury was insufficient to support a finding of probable cause. When reviewing a motion to dismiss an indictment based on insufficient evidence, the sole issue that we confront is whether the grand jury heard "sufficient evidence to establish the identity of the accused ... and probable cause to arrest him." Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). In this context, probable cause requires "reasonably trustworthy information ... sufficient to warrant a prudent [person] in believing that the defendant had committed ... an offense." Commonwealth v. O'Dell, 392 Mass. 445, 450 (1984) (quotation omitted).
General Laws c. 265, § 50(a ), inserted by St. 2011, c. 178, § 3, states in relevant part:
"Whoever knowingly: (i) subjects, or attempts to subject, or recruits, entices, harbors, transports, provides or obtains by any means ... another person to engage in commercial sexual activity ... or causes a person to engage in commercial sexual activity ... or (ii) benefits, financially or by receiving anything of value, as a result of a violation of clause (i), shall be guilty of the crime of trafficking of persons for sexual servitude...."[10]
The grand jury heard testimony that Henriquez arranged meetings with clients by telephone and then drove women to the clients' houses to engage in sexual activity for a fee. A witness also testified she immediately turned over to Henriquez the money she received, with some of it later returned to her. Taken together, the grand jury heard sufficient evidence to conclude that probable cause existed to arrest Henriquez for engaging in sex trafficking as defined by the statute. Thus, the indictment properly issued, and there was no error in the denial of both the motion to dismiss and the motion for a directed verdict.
Judgments affirmed.

Hernandez's further attempt to create vagueness within the sex trafficking statute by attaching conspiracy to the crime of deriving support from prostitution, G. L. c. 272, § 7, fares no better. It does not matter that conspiracy contains the same "prospective" mens rea as sex trafficking, as the underlying crime-deriving support from prostitution-still criminalizes different conduct. Commonwealth v. McGhee, 472 Mass. 405, 417 (2015) (G. L. c. 272, § 7, prohibits sharing proceeds earned by known prostitute while trafficking statute does not require individual to benefit from commercial sexual activity, financially or otherwise).

It matters not that the defendants in McGhee agreed that the element of force or coercion was not required by § 50, whereas here Henriquez argues that such an element must be read into § 50 to prevent it from being unconstitutionally vague. In both McGhee and this case, the defendants' argument is that without the element of force or coercion, the statute is unconstitutional. This contention was satisfactorily addressed in McGhee, 472 Mass. at 415-417.

The judge questioned jurors nos. 75 and 131, whom juror no. 181 said were also in the elevator with her and the trooper. When juror no. 75 told the judge she didn't remember riding in an elevator with anyone the previous day, the judge questioned the only other woman on the jury, in case juror no. 181 was mistaken as to the two other female jurors in the elevator with her. Juror no. 75 later clarified that she had been in the elevator, but was not aware of any conversation because she was texting on her cellular telephone.

In that case, nearly the entire jury-thirteen out of sixteen jurors-had read a newspaper article containing allegedly prejudicial information about the defendant. Commonwealth v. Jackson, supra at 797-798.

The evidence included a cellular telephone seized from Hernandez with a telephone number that matched the number of the telephone being wiretapped; photographs on that seized telephone depicting Hernandez and her husband; the content of one wiretap recording wherein a male voice mentions Hernandez's husband and a female voice responds by giving him Hernandez's husband's telephone number; and the content of another recording wherein the female caller responds to the name "Ramonita."

Furthermore, Hernandez's argument that Spanish-speaking jurors who could not read English would serve as a "check" on the translations of the recordings provided by the Commonwealth is contrary to the law of this State. When evidence in a foreign language is admitted along with an English translation, the translation is the only evidence the jury may consider, not the foreign language statement. Commonwealth v. Esteves, 46 Mass. App. Ct. 339, 345 (1999).

The affidavit states that investigators employed physical surveillance, GPS tracking, trash analysis, banking and financial record analysis, cellular telephone toll record analysis, and confidential informant interviews. And contrary to Henriquez's claim, investigators did utilize several informants in the course of their investigation.

Despite the phrase "sexual servitude" used in the statute, neither force nor coercion is a required element. "The clear and deliberate focus of the statute is the intent of the perpetrator, not the means used by the perpetrator to accomplish his or her intent." Commonwealth v. McGhee, 472 Mass. at 415. The phrase "sexual servitude" as used in the statute is simply a descriptor of the crime committed by meeting each of the elements therein, not an element of the crime itself. Thus, Henriquez's claim that the grand jury heard no evidence that he forced or coerced the women into prostitution is irrelevant.