NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-09265

COMMONWEALTH  vs.  JASON ROBINSON.


Suffolk.     February 6, 2023. – January 11, 2024.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Homicide.  Felony-Murder Rule.  Joint Enterprise.  Robbery.
    Evidence, Joint enterprise, Statement of codefendant,
    Hearsay, Third-party culprit, Expert Opinion.  Practice,
    Criminal, Capital case, New trial, Hearsay, Trial of
    defendants together, Instructions to jury, Argument by
    prosecutor, Sentence.  Constitutional Law, Sentence.



    Indictments found and returned in the Superior Court
Department on September 27, 2000.

    Following review by this court, 480 Mass. 146 (2018), a
motion for a new trial was heard by Robert L. Ullmann, J., and a
motion for reconsideration was also heard by him.


    Rosemary Curran Scapicchio (Jillise McDonough also present)
for the defendant.
    Paul B. Linn, Assistant District Attorney, & Cailin M.
Campbell, Special Assistant District Attorney (John C. Verner,
Assistant District Attorney, also present) for the Commonwealth.
    The following submitted briefs for amici curiae:
    Darina Shtrakham, of California, Matt K. Nguyen, of the
District of Columbia, & Adam Gershenson for Jeffrey Aaron &
others.

Jasmine Gonzales Rose, of Oregon, Duke K. McCall, III, & Douglas A. Hastings, of the District of Columbia, Robert S. Chang, of Washington, Caitlin Glass, Neda Khoshkoo, & Katharine Naples-Mitchell, for Boston University Center for Antiracist Research & others.

Kenneth J. Parsigian, Avery E. Borreliz, Erin M. Haley, & Martin W. Healy for Carol S. Ball & others.

Benjamin H. Keehn, Committee for Public Counsel Services, & John J. Barter for Committee for Public Counsel Services.

BUDD, C.J.  Following a joint jury trial with his codefendant, the defendant, Jason Robinson, was convicted of murder in the first degree on a joint venture theory of felony-murder, with armed robbery as the predicate offense, in connection with the shooting death of Inaam Yazbek (victim).[1] The defendant appeals from his convictions and from the denial of his motion for a new trial, claiming that there was insufficient evidence to convict him as well as reversible error on the part of the Commonwealth and the judge.  In the alternative, he asks us to declare his life sentence without parole to be unconstitutional because he was nineteen years old at the time of the crime, based on Diatchenko v. District

---

[1] The defendant also was convicted of unlicensed possession of a firearm as a coventurer, for which he received a sentence of from four to five years to run concurrently with his life sentence.  However, as no evidence was presented that the defendant did not have a license to carry a firearm, the judgment as to this conviction must be reversed and the verdict set aside, so that the defendant may be retried.  See Commonwealth v. Guardado, 493 Mass. 1, 7 (2023).

Attorney for the Suffolk Dist., 466 Mass. 655 (2013), and sentence him to life with parole after fifteen years.

We affirm the defendant's conviction of murder in the first degree, as well as the order denying his motion for a new trial. After full consideration of the record, we further conclude that extraordinary relief under G. L. c. 278, § 33E, is not warranted. However, pursuant to our decision in Commonwealth v. Mattis, 493 Mass.    (2023), the defendant's sentence of life without the possibility of parole is unconstitutional where he was nineteen years old at the time of the offense of murder in the first degree.[2] We therefore remand this matter to the Superior Court for resentencing on the charge of murder in the first degree in accordance with that decision.[3]

Background. We summarize the facts as the jury could have found them, reserving certain details for later discussion. On March 27, 2000, the defendant was with codefendant Tanzerius

---

[2] This case was paired with the one underlying Mattis, because, similarly to the defendant here, Mattis asked this court to consider whether a sentence of life without parole is constitutional when applied to those who committed their crime while under twenty-one years of age.

[3] We acknowledge the amicus briefs on this issue submitted by seventeen neuroscientists, psychologists, and criminal justice scholars; Boston University Center for Antiracist Research, Fred T. Korematsu Center for Law and Equality, Center on Race, Inequality, and the Law, and Criminal Justice Institute at Harvard Law School; twenty-three retired Massachusetts judges, Boston Bar Association, and Massachusetts Bar Association; and Committee for Public Counsel Services.

Anderson, Joleena Tate (Anderson's girlfriend), Heather Coady, and Edward Gauthier at Gauthier's home.  While there, Tate asked Anderson if he wanted to rob someone.  She told Anderson that she knew someone named "Yaz," who always carried a large amount of cash and was a "passive" person who would not "put up a fight if ever approached."  After indicating that he was interested in committing the robbery, Anderson called the defendant into the room to ask him whether he was "down for a robbery."  The defendant agreed.

The trio planned that Tate would meet the victim and then lead him to an apartment building in Brighton, where Anderson and the defendant would ambush him.  After having dinner with the victim at a restaurant in Watertown, Tate asked him to drive her to the designated location and, using the victim's cell phone, sent "1145" to the defendant's pager to signal when she would be at the appointed meeting place.

When Tate and the victim arrived, she led him into a hallway of the building and then back out again, where they encountered Anderson and the defendant.  Tate said to the victim, "[W]e're being robbed," and walked away.  Anderson and the defendant led the victim by his arms back into the building.

Once inside, Anderson told the victim to keep his hands up and not to turn around to look at them.  Anderson further told the victim that he was going to be frisked for his belongings.

At that point, the victim began to plead with them and to reach for a doorknob.  Anderson told the victim to stop reaching.  The victim continued to plead and said that he was not a police officer.  Anderson then became "nervous" and shot the victim in the back of the head.  Anderson and the defendant ran out of the building, got into Anderson's car with Tate, and drove away. The defendant, who was seated in the back, was holding a cell phone and wallet and began to count the cash inside the wallet. When Tate asked Anderson what happened, Anderson replied, "[H]e's murked," which Tate understood to mean dead.  Anderson also said, "I got my body for the summer."  Anderson then removed a gun from his right vest pocket and passed it to the defendant.  Anderson parked the car in a vacant lot, took the gun from the defendant, hid it under a piece of construction equipment, and drove away.  Anderson returned to the lot later that evening with Tate and the defendant, retrieved the gun, and passed it to the defendant again.  The Commonwealth did not present evidence of a recovered gun to the jury.[4]

Hours later, a resident of the apartment building found the victim outside the building lying in a pool of blood.  The medical examiner later determined that the cause of death was a

---

[4] The prosecutor represented to the court, outside the presence of the jury, that no gun was ever recovered in this case.

single gunshot wound to the head, fired within one-half inch, or closer, from the side of the victim's face.

We stayed the defendant's direct appeal in order for a Superior Court judge to hear his motion for a new trial. After the defendant's motion for a new trial was allowed, we reversed that order on appeal and remanded for additional findings. Commonwealth v. Robinson, 480 Mass. 146, 155 (2018). The motion for a new trial ultimately was denied on all but one issue, sufficiency of the evidence for the felony-murder conviction, which was reserved for this court.

Discussion. 1. Sufficiency of the evidence. In order for a jury to convict a defendant of joint venture felony-murder with armed robbery as the predicate offense, the Commonwealth must establish beyond a reasonable doubt that the defendant participated in committing the armed robbery as a joint venturer with the intent to commit that offense and that the victim was killed in furtherance of that armed robbery. Commonwealth v. Gallett, 481 Mass. 662, 673 (2019). To prove armed robbery, the Commonwealth must prove that a defendant (1) was armed with a dangerous weapon; (2) either applied actual force or violence to the victim, or by words or gestures put the victim in fear; (3) took the money or the property of the victim; and (4) did so with the intent to steal it. Commonwealth v. Chesko, 486 Mass. 314, 320 (2020). Thus, to convict the defendant of armed

robbery by joint venture, the Commonwealth was required to show that the defendant knew that Anderson was armed and that the defendant assisted Anderson in committing the armed robbery while sharing the intent to steal the property of the victim. See Commonwealth v. Semedo, 456 Mass. 1, 11 (2010).

The defendant argues that the Commonwealth failed to prove that he committed joint venture armed robbery (and consequently failed to prove joint venture felony-murder) because there was insufficient evidence that he knew Anderson was armed. For the reasons discussed infra, we disagree.

In reviewing claims of insufficient evidence, we assess the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt. Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). In so doing, we keep in mind that "[p]roof of the essential elements of the crime may be based on reasonable inferences drawn from the evidence, . . . and the inferences a jury may draw need only be reasonable and possible and need not be necessary or inescapable." Commonwealth v. Kapaia, 490 Mass. 787, 791 (2022), quoting Commonwealth v. West, 487 Mass. 794, 800 (2021).

We conclude that, taken together, the evidence was sufficient to permit an inference that the defendant knew that Anderson would be armed when they committed the robbery. See,

e.g., Commonwealth v. Phap Buth, 480 Mass. 113, 118, cert. denied, 139 S. Ct. 607 (2018); Commonwealth v. Rakes, 478 Mass. 22, 32-33 (2017). First, prior to the robbery, Anderson, the defendant, and Tate planned that it would take place in the hallway of an apartment building. The defendant's knowledge that Anderson was armed therefore could be inferred, where a weapon was likely to be of particular use to "persuade the victim to surrender his property quickly and without resistance" to avoid being seen by potential witnesses.[5] Commonwealth v. Colon, 52 Mass. App. Ct. 725, 728 (2001). See Commonwealth v. Quinones, 78 Mass. App. Ct. 215, 220 (2010) (knowledge that codefendant was armed inferred where robbery needed to be effectuated quickly). In addition, neither Anderson nor the defendant had a mask, and they therefore would need a weapon to discourage the victim from looking at them.

Notably, the defendant and Anderson spent between one and two hours together, after dropping Tate off to meet and spend time with the victim before the robbery. It is reasonable to infer that, during that period of time, the defendant and Anderson discussed their plan further and that Anderson made the

_____

[5] The defendant contends that the evidence demonstrated that he would not expect that a weapon would be necessary because Tate told Anderson that the victim was "passive." However, the defendant was not present to hear this exchange, thus it is not probative as to whether the defendant knew that Anderson brought a gun to the robbery.

defendant aware of the gun.  See Commonwealth v. Norris, 462 Mass. 131, 139-140 (2012) (defendant "had an opportunity to see the gun earlier that evening on the trip" to site of robbery); Commonwealth v. Netto, 438 Mass. 686, 703 (2003), citing Commonwealth v. Tracy, 27 Mass. App. Ct. 455, 458 (1989).

Even assuming that the defendant was unaware that Anderson had a gun until Anderson pulled it out, the defendant did not withdraw from participation in the joint venture at that time. Instead, the defendant had possession of a wallet and cell phone, which the jury could infer belonged to the victim, when he returned to Anderson's car.  See Commonwealth v. Eagles, 491 Mass. 210, 219-220 (2023) (jury could infer that defendant had requisite intent for armed robbery where, after learning of coventurer's use of weapon, defendant continued to take victim's valuables).  "Where a defendant continues to act in furtherance of the joint venture even after learning of a coventurer's weapon, we have allowed an inference that the coventurer had the requisite intent for the joint venture."[6]  Phap Buth, 480 Mass.

---

[6] The defendant argues that Rosemond v. United States, 572 U.S. 65, 78 (2014), establishes a different standard, requiring that proof of a "defendant's knowledge of a firearm must be advance knowledge."  Notwithstanding that the United States Supreme Court was interpreting a particular Federal criminal statute, 18 U.S.C. § 924(c), it went on to clarify, "Of course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such

at 117.  Compare Commonwealth v. Mazariego, 474 Mass. 42, 48-49 (2016) (defendant guilty of joint venture where he remained at scene with coventurer after crime), with Commonwealth v. Fickett, 403 Mass. 194, 200-201 (1988) (evidence presented that, if believed, would have raised reasonable doubt whether defendant had withdrawn from joint venture where he explicitly informed coventurer of his withdrawal from robbery plot).

The totality of the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support the jury's finding that the defendant intended to participate with Anderson in an armed robbery of the victim.  Where the circumstances of the robbery gave rise to a reasonable inference that a weapon would be needed, and where the evidence suggested that the defendant did not withdraw from the venture after Anderson drew the gun, the jury were permitted to infer that the defendant possessed the requisite knowledge and intent to be convicted of the predicate offense of armed robbery.  There thus was sufficient evidence to convict him of felony-murder.

2.  Admission of codefendant's statements and acts.  The defendant argues that the admission of certain evidence over his

---

knowledge."  Id. at 78 n.9.  This is compatible with our case law.  See, e.g., Phap Buth, 480 Mass. at 117.

objection unduly prejudiced him.[7]  For the reasons discussed
infra, we are not persuaded.

a.  Before the shooting.  The defendant suggests that
Tate's testimony regarding events involving only Tate and
Anderson had an adverse impact on the defendant.  First, Tate
testified that, prior to the robbery, she and Anderson had
discussed a scheme Anderson had to rob drug dealers.  She also
testified that, two days before the shooting, she and Anderson
had traveled to New Hampshire, broke into Tate's father's
condominium, and stole firearms and ammunition, including a .357
magnum revolver.

On appeal, the defendant does not specify how this evidence
was prejudicial to him.  He was not implicated in either
Anderson's planned scheme to rob drug dealers or the theft of
the firearm.  Moreover, at the time of Tate's testimony, the
judge provided limiting instructions emphasizing to the jury
that they could not consider evidence concerning one defendant
against the other unless they determined that the acts or

---

[7] As the defendant objected to the admission of this
evidence at trial, we review any erroneous admission of hearsay
for prejudicial error and determine whether any error of a
constitutional dimension was harmless beyond a reasonable doubt.
See Commonwealth v. Wardsworth, 482 Mass. 454, 465 (2019).
However, as discussed infra, we ultimately find no error in the
admission of this testimony.

statements occurred during a joint venture.[8]  She reemphasized this point in the final jury charge.  As we presume that the jury followed the judge's instructions, see Commonwealth v. Sylvia, 456 Mass. 182, 195 (2010), the defendant was not prejudiced by the admission of this evidence.

   b.  After the shooting.  The defendant also challenges the admission of various statements Anderson made after the

_____

   [8] The judge instructed the jury:

   "[B]efore you can consider any evidence of acts or
   statements allegedly made by one of the participants
   against the defendants here under a theory of joint
   venture, you first need to determine whether the
   Commonwealth has presented sufficient evidence which is
   independent of those acts or statements to support a fair
   inference that there was a joint venture between the
   participants and the defendants. . . .  If you find that
   there was sufficient evidence to support a fair inference
   that a joint venture existed, then you can consider
   evidence of the acts and statements of each of the
   participants against the defendants."

   The judge further instructed that only the "acts and
statements occurring while the joint venture exists or made when
the joint venturers were acting to conceal the crime, and that
are relevant to the joint venture," could be so admissible.
Although it would have been more accurate to instruct that only
the acts and statements made "in furtherance of," as opposed to
"relevant to," the joint venture were admissible, see
Commonwealth v. Wilkerson, 486 Mass. 159, 175 (2020), the
instructions nonetheless conveyed that only certain acts and
statements -- those that were a part of the joint venture --
could be admissible against the defendant.  See Commonwealth v.
Kelly, 470 Mass. 682, 697 (2015) ("We do not require that judges
use particular words, but only that they convey the relevant
legal concepts properly").

shooting.  As discussed infra, we conclude that these statements were properly admitted.

Tate testified that immediately after the shooting, when she initially asked Anderson "what happened" to the victim, he responded, "[H]e's murked," which she understood to mean that he was dead.  She further testified that days later Anderson provided more details about the shooting that implicated the defendant in the crime.[9]

Out-of-court statements, such as Anderson's, may be offered to prove the truth of the matter asserted and are admissible against a defendant if made by a coventurer "during the cooperative effort and in furtherance of its goal."  Mass. G. Evid. § 801(d)(2)(E) (2023).  See Commonwealth v. Wardsworth, 482 Mass. 454, 459-460 (2019).  Before admitting such evidence, however, a judge must make a preliminary determination, based on a preponderance of the evidence, separate from the out-of-court statement itself, that a joint venture existed between the declarant and the defendant and that the statement was made

---

[9] Because neither defendant testified, the details of the robbery and killing were presented at trial through Tate's testimony, which was based on this conversation with Anderson.

during and in furtherance of that venture.[10]  See <u>Commonwealth</u> v.
<u>Samia</u>, 492 Mass. 135, 142-144 (2023).

Anderson's statements describing the crime to Tate were
made immediately after the shooting and a few days later.  There
was ample evidence from which to conclude that Tate was a joint
venturer, as she was a central party in the robbery's planning,
preparation, and execution.  See <u>Rakes</u>, 478 Mass. at 40, citing
<u>Commonwealth</u> v. <u>Bright</u>, 463 Mass. 421, 436 n.21 (2012).  Viewing
the evidence in the light most favorable to the Commonwealth,
these statements were made during and in furtherance of the
concealment of the joint venture, and thus were admissible
against the defendant.[11]  See <u>Commonwealth</u> v. <u>Winquist</u>, 474 Mass.
517, 523 (2016) ("appellate courts . . . have deemed admissible
statements made by joint venturers during the so-called
concealment phase of their criminal enterprise when such phase
is relatively close in time to the commission of the crime").
In making these statements, Anderson was sharing information

_____

[10] Additionally, the jury also must be instructed that they
may consider such statements as against a coventurer (here, the
defendant) "only if they find that a joint venture existed
independent of the statements, and that the statements were made
in furtherance of that venture" (citation omitted).
<u>Commonwealth</u> v. <u>Winquist</u>, 474 Mass. 517, 521 (2016).

[11] There is no question that Anderson's second statement
describing the shooting occurred during the concealment phase of
the joint venture, as Tate testified that Anderson also said at
that time, "[A]s long as we stick to the story no one was going
to be in trouble."  Cf. <u>Rakes</u>, 478 Mass. at 41.

with a fellow joint venturer and revealed no details of the crime to anyone outside the joint venture. Contrast Commonwealth v. Santos, 463 Mass. 273, 291-292 (2012). The judge did not abuse her discretion in admitting them. See Winquist, supra at 521 ("A judge's determination as to the existence and scope of a joint venture is reviewed under the abuse of discretion standard").[12]

The defendant also argues that the statements Anderson made to Tate, as well as a statement Anderson made to police approximately one week after the robbery and killing, were inadmissible in violation of Bruton v. United States, 391 U.S. 123 (1968). We disagree.

Under Bruton, "the introduction at a joint trial of a nontestifying codefendant's statement, which names and incriminates the other defendant, violates that defendant's

---

[12] The defendant references, in passing, statements that Anderson made in the presence of Coady. But neither these, nor statements Anderson made to Gauthier, were improperly admitted. While Anderson told Tate the details of the robbery and killing, Coady was sitting with the defendant about twenty feet away. The defendant, however, does not allege, and there is no evidence, that Coady heard Anderson's statements at that time. Although Anderson and the defendant later talked to Gauthier, the evidence clearly shows that the point of the discussion was, as Gauthier testified that Anderson had told him, to get Gauthier not to say anything more and "to stick to [his] story." See Commonwealth v. Steadman, 489 Mass. 372, 380 (2022) (joint venturer statements to third party admissible where statements were "an attempt to enlist [his or] her aid in concealing the crime").

right to confront his accusers under . . . the Sixth Amendment [to the United States Constitution]." Commonwealth v. Rivera, 464 Mass. 56, 69, cert. denied, 570 U.S. 907 (2013), citing Bruton, 391 U.S. at 137. Such a statement that "expressly implicate[s]" the defendant, leaving no doubt that it would be "powerfully incriminating," is prohibited under Bruton (citation omitted). Rivera, supra. A codefendant's statement that becomes incriminating when linked with trial evidence is also prohibited by Bruton, but only where the circumstances and nature of the statement "so obviously implicate the defendant in the crime itself as virtually to constitute direct incrimination" (citation omitted). Id. at 70. Cf. Commonwealth v. Blake, 428 Mass. 57, 60-61 (1998) (no Sixth Amendment issue where statements referred to but did not inculpate defendant).

As an initial matter, the defendant's argument that Anderson's account of the robbery and killing to Tate violates Bruton is unpersuasive, as it hinges on an assertion that Tate was not a part of the joint venture. See Commonwealth v. Robertson, 489 Mass. 226, 232 (2022); Commonwealth v. DePina, 476 Mass. 614, 629 n.13 (2017). For the reasons explained supra, we disagree with that premise.

The defendant also challenges the judge's admission of a statement that Anderson made to police on April 4, one week after the robbery and killing. But to the extent the defendant

argues that this evidence violated the prohibition on a nontestifying codefendant's statement that implicates the defendant in the crime, his argument mischaracterizes Anderson's statement.  The statement Anderson gave did, as the defendant points out, place the two together on the day of the crime.  However, Anderson also explicitly denied being with the defendant at any time during which the crime in question occurred.[13]

Therefore, Anderson's "statements were not sufficiently inculpatory to offend the defendant['s] Sixth Amendment rights."  Blake, 428 Mass. at 60.  Anderson told the police that during the time the crime actually occurred, he was not with the defendant and that he thought the defendant had gone home.  "Even if we take the statement of [Anderson] to suggest that the defendant['s] whereabouts were unknown to him around the time of the shooting[]," the statement did not inculpate the defendant in any concrete way.  Id. at 62.  See Commonwealth v. Vasquez, 462 Mass. 827, 843-844 (2012).

---

[13] Indeed, Anderson told the police that, on the night of the murder, he had been with the defendant earlier in the evening for a short time and gave the defendant a ride, but that he (Anderson) had dropped off the defendant and did not see the defendant again until the next day.  Anderson further stated that he spent that night drinking beers with another friend approximately from 9 P.M. until 11 P.M., when he went to sleep.

Additionally, because Anderson's false statements to police, made only a few days after the crime had occurred and during the concealment phase of the joint venture, "were designed to keep the police from discovering" that Anderson and the defendant were involved in the victim's killing, these statements were admissible as nonhearsay as well, as they were made by a coventurer in furtherance of the joint venture's concealment.  Commonwealth v. Trotto, 487 Mass. 708, 721 (2021). See Commonwealth v. Mavredakis, 430 Mass. 848, 863-864 (2000). There was no error.

3.  Severance.  The rules of criminal procedure allow for defendants to be joined in the same indictment "if the charges against them arise out of the same criminal conduct or episode or out of a course of criminal conduct or series of criminal episodes so connected as to constitute parts of a single scheme, plan, conspiracy or joint enterprise."  Mass. R. Crim. P. 9 (b), 378 Mass. 859 (1979).  Severance is appropriate, however, where a defendant demonstrates that "(1) the defenses are antagonistic to the point of being mutually exclusive, . . . or (2) the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial" (quotations and citations omitted).  Commonwealth v. Siny Van Tran, 460 Mass. 535, 542 (2011).  The defendant argues on appeal that the judge abused her discretion in denying his motion to be tried

separately from Anderson, claiming that, as was apparent prior to trial, the overwhelming evidence of Anderson's guilt spilled over to inculpate him.  We are not convinced.

The defendant does not suggest that his theory of the case was incompatible with Anderson's.  In fact, both defendants focused on attacking Tate's credibility, pointing out the inadequacy of the police's investigation, and suggesting the existence of third-party culprits.  Nor has the defendant demonstrated that being tried with Anderson resulted in prejudice so acute as to deprive him of a fair trial.

As discussed supra, evidence of Anderson's statements and actions properly were admitted.  See Commonwealth v. Clarke, 418 Mass. 207, 218-219 (1994) (severance not required where codefendant's statements were admissible).  We detect no potential for "prejudicial spillover effect" where much of the evidence admitted against Anderson was also admissible against the defendant, and the jury were provided with appropriate instructions as to how to view the evidence.  Commonwealth v. Helfant, 398 Mass. 214, 229-231 (1986).  Contrary to the defendant's assertions, the evidence against him clearly established that he willingly agreed to participate in the joint venture, was involved in its planning, and was present for its execution.  As a result, "a second proceeding" against the defendant would have been "largely duplicative of the first."

Id. at 231. See Commonwealth v. Gaynor, 443 Mass. 245, 259-260 (2005). The judge did not abuse her discretion in denying the defendant's motion to sever. See Commonwealth v. Watson, 487 Mass. 156, 168 (2021) (orders regarding severance are reviewed for abuse of discretion).

4. Jury instructions. The defendant also argues that the judge failed to instruct the jury that they were to consider the evidence against each defendant separately,[14] resulting in a substantial likelihood of a miscarriage of justice.[15] We disagree.

During her preliminary instructions to the jury, prior to opening statements, the judge explained that the Commonwealth was required to "prove the guilt of each defendant." As discussed supra, during the trial the judge gave limiting instructions at appropriate points, admonishing the jury to consider evidence relating to a particular defendant against

---

[14] Specifically, the defendant contends that the judge should have instructed the jury that (1) "they were to consider each element against each defendant separately," (2) "the fact that the defendants were on trial together is not evidence that there is any connection between them and is not any evidence of their guilt," and (3) they were "not to consider evidence of Anderson's bad acts (i.e.[,] the Commonwealth's claim that he had engaged in an uncharged robbery of a firearm) against [the defendant]."

[15] As the defendant neither requested these instructions nor objected to the instructions provided, any error is reviewed for a substantial likelihood of a miscarriage of justice. See Commonwealth v. Toolan, 490 Mass. 698, 705 (2022).

that defendant only unless they find sufficient evidence to support that a joint venture existed, in which case the acts and statements of coventurers done in furtherance of the joint venture could be attributed to the defendant.  See, e.g., Commonwealth v. Wilkerson, 486 Mass. 159, 175 (2020).  Moreover, during her final instructions, she repeatedly stated that the jury were required to assess and carefully consider the evidence as it related to each defendant individually.

Judges are "not required to grant a particular instruction so long as the charge, as a whole, adequately covers the issue."[16]  Commonwealth v. Teixeira, 490 Mass. 733, 742 (2022), quoting Commonwealth v. McGee, 467 Mass. 141, 154 (2014).  This is especially true where, as here, the defendant did not request instructions on this issue.  As the judge's instructions were entirely proper, there was no error and, thus, no substantial likelihood of a miscarriage of justice.

5.  Third-party culprit and Bowden evidence.  The defendant contends that the judge erred in excluding evidence relating to two persons that he sought to present as third-party culprits and as suspects whom police failed to investigate.  See

---

[16] The fact that the jury found Anderson guilty of murder in the first degree on theories of extreme atrocity or cruelty and felony-murder, but found the defendant guilty of murder in the first degree on a theory of felony-murder only, suggests that they followed the judge's instructions to consider the evidence against each defendant separately.

Commonwealth v. Andrade, 488 Mass. 522, 532 (2021). We conclude that no error occurred.

"Third-party culprit evidence is 'a time-honored method of defending against a criminal charge.'" Commonwealth v. Silva-Santiago, 453 Mass. 782, 800 (2009), quoting Commonwealth v. Rosa, 422 Mass. 18, 22 (1996). A defendant generally is given "wide latitude to the admission of relevant evidence that a person other than the defendant may have committed the crime charged." Silva-Santiago, supra at 800-801. However, the evidence "must have a rational tendency to prove the issue the defense raises[] and . . . cannot be too remote or speculative." Id. at 801, quoting Rosa, supra. Additionally, if the third-party culprit evidence constitutes hearsay that does not fall within a hearsay exception, it is admissible if "the evidence is otherwise relevant, will not tend to prejudice or confuse the jury, and there are other 'substantial connecting links' to the crime" (citation omitted). Silva-Santiago, supra. See generally Mass. G. Evid. § 1105 (2023).

At trial, the defendant proffered that one person was a possible third-party culprit because allegedly he had been Tate's boyfriend, lived in the same development where the crime occurred, and was "known by the police" to have been in possession of two "three fifty-seven magnums" approximately one

month before the killing.[17]  The second person was alleged to have lived in an apartment above Gauthier's, been present in Gauthier's apartment on March 27, visited Tate at a boarding school near the condominium from which the gun was taken, and been friends with both Gauthier and Tate.  Based on the information provided, the judge excluded the third-party culprit evidence, concluding that it did not provide "substantial connecting links" between either person and the crime "so as not to confuse the jury."  This decision was not error, where the proffered evidence had no rational tendency to prove that either of the two was involved in the killing.  See Andrade, 488 Mass. at 532 (to be admissible, third-party culprit evidence "must have a rational tendency to prove the issue the defense raises, and [it] cannot be too remote or speculative" [citation omitted]).

In addition to presenting third-party culprit evidence, defendants may "base their defense on the failure of police adequately to investigate a murder in order to raise the issue of reasonable doubt as to the defendant's guilt."  Commonwealth v. Phinney, 446 Mass. 155, 165 (2006).  See Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980).  Whether evidence of

---

[17] Aware of this, the police conducted fingerprint testing to see if this individual's prints matched those found in Tate's father's condominium.  They did not.

shoddy police work may be admitted, however, is left to the discretion of the trial judge.  See Commonwealth v. Steadman, 489 Mass 372, 385 (2022); Silva-Santiago, 453 Mass. at 800-801. Here, the defendant's argument that he was prevented from presenting Bowden evidence fails based on the trial record.  The judge was clear in her ruling that she was only excluding third-party culprit evidence and had not "excluded anything on Bowden," so the defendant was "free to explore Bowden [evidence]."

6.  Commonwealth's opening statement and closing argument. The defendant contends that errors made by the prosecutor in his opening statement and closing argument warrant reversal. Specifically, the defendant contends that the prosecutor impermissibly appealed to the jurors' sympathy and improperly vouched for Tate's credibility.  As the defendant objected to the remarks at issue, we review them to determine whether any error was prejudicial.  See Commonwealth v. Alemany, 488 Mass. 499, 511 (2021).

a.  Appeals to sympathy.  The defendant argues that the prosecutor improperly appealed to the jurors' sympathy during his opening statement in characterizing the victim's final moments as spent "begging . . . for his life" and, as attributed by defense counsel, describing the victim's face after the

shooting as being "ripped off."[18]  The defendant also takes issue with the prosecutor having raised that one of the victim's brothers was planning to visit the victim, but the victim was killed before he arrived.  Neither was error.

The prosecutor's description of the gunshot wound to the victim's face made during opening statement was accurate based on the evidence presented at trial.[19]  See Commonwealth v. Barbosa, 477 Mass. 658, 670 (2017) (closing not improper where "the prosecutor's description of the victim's murder was based on the evidence and was relevant to establish the nature of the crime").  Where the Commonwealth was proceeding, in part, on a theory of extreme atrocity or cruelty,[20] the "[d]etails regarding

---

[18] This word choice was an inaccurate characterization made by defense counsel when he objected at sidebar.  The prosecutor never stated that the victim's face was "ripped off," but variously described the victim's face as having been "peeled off," "basically annihilated," and "blown off."  We construe the defendant's argument on appeal as pertaining to all of these descriptions, as his objection at trial indicated.

[19] One witness testified that the victim's "face was distorted" and "wasn't attached," and another witness testified that it "wasn't . . . a pretty sight."  The medical examiner described a laceration on the victim's face that was six inches long and about two inches deep.  A police officer testified that, when he first observed the victim, he believed that the injury to the victim's face had been caused by "a machete or a hatchet" and not by a gun.

[20] Although the defendant ultimately was convicted only of felony-murder, the Commonwealth also proceeded against both the defendant and Anderson on theories of extreme atrocity or cruelty and deliberate premeditation.

how the victim died were relevant to the jury's determination as to the manner of killing necessary to justify a conviction of murder in the first degree." Commonwealth v. Henley, 488 Mass. 95, 132 (2021), citing Commonwealth v. Johnson, 429 Mass. 745, 748 (1999). Thus, the description of the extent of the victim's injuries did not amount to error. See Commonwealth v. Martinez, 476 Mass. 186, 199 (2017), quoting Commonwealth v. Wilson, 427 Mass. 336, 350-351 (1998).

The same is true of the prosecutor's description of the victim as begging for his life. Where the evidence suggested that the victim had pleaded with Anderson and the defendant while a gun was pointed at him, the prosecutor's description, if enthusiastic, was based on the evidence. See Barbosa, 477 Mass. at 670-671.

Nor did the mention of the victim's brothers constitute an improper appeal to the jury's sympathy. A prosecutor may "tell the jury something of the person whose life had been lost in order to humanize the proceedings" (citations omitted). Commonwealth v. Doughty, 491 Mass. 788, 797-798 (2023). The prosecutor's comments, while "certainly sympathetic, . . . were not excessive, nor were they the focal point." Commonwealth v. Rodriguez, 437 Mass. 554, 567 (2002), citing Commonwealth v. Degro, 432 Mass. 319, 326-328 (2000). Cf. Commonwealth v. Cheng Sun, 490 Mass. 196, 210 (2022). They did not constitute error.

b.  Vouching.  During his closing argument, the prosecutor told the jury that they would be able to see Tate's plea agreement, which demonstrated that she was obligated "to tell the truth" or "be prosecuted."  The prosecutor also asked, "[W]ith that obligation, what motivation is there for [Tate] to lie?"  The prosecutor then stated that "[t]here is no motivation for [Tate] to do anything but to tell the truth in this case" and that Tate had "no motive to lie."  The defendant argues that this constitutes vouching.  We disagree.

Where a witness testifies pursuant to a plea agreement, a prosecutor may not suggest that the government has special knowledge of that witness's credibility.  See Commonwealth v. Webb, 468 Mass. 26, 31-32 (2014).  However,

> "[a] prosecutor may generally bring out on direct examination the fact that a witness has entered into a plea agreement and understands his [or her] obligations under it, but any attempts to bolster the witness by questions concerning his [or her] obligation to tell the truth should await redirect examination, and are appropriate only after the defendant has attempted to impeach the witness's credibility by showing the witness struck a deal with the prosecution to obtain favorable treatment."

Commonwealth v. Washington, 459 Mass. 32, 44 n.21 (2011), citing Commonwealth v. Ciampa, 406 Mass. 257, 264 (1989).

This is exactly what happened here.  On cross-examination, trial counsel for both defendants asked Tate extensive questions about her plea agreement with the Commonwealth in order to impeach her credibility.  Trial counsel for the defendant made

Tate's plea deal a central part of his closing argument, suggesting that she lacked credibility. The prosecutor responded to the attack on Tate's credibility by asking the jury what motivation Tate had to lie, given that the government was recommending a sentence for her of from eight to ten years. Cf. Commonwealth v. Polk, 462 Mass. 23, 39-40 (2012). Although he referenced Tate's plea agreement, the prosecutor stopped short of suggesting that the government had "special knowledge by which it can verify the witness's testimony."[21] Webb, 468 Mass. at 32, quoting Washington, 459 Mass. at 44 n.21. See Cheng Sun, 490 Mass. at 219. There was no improper vouching.

7. Ballistics expert evidence. The defendant argues that the opinion testimony provided by the Commonwealth's ballistics expert, Sergeant Detective Mark Vickers, that the victim's injuries were consistent with the use of a high velocity weapon and that a .357 magnum firearm is a "perfect example" of a high velocity weapon, was unreliable and prejudicial. It was neither.

Expert testimony is admissible if reliable, relevant, and helpful to the jury in understanding matters "outside their common experience." Commonwealth v. Hinds, 487 Mass. 212, 217-

_____

[21] Moreover, during her final charge, the judge thoroughly instructed the jury to "examine . . . Tate's credibility . . . with greater caution than you would that of other witnesses." See Ciampa, 406 Mass. at 266.

218 (2021), quoting Commonwealth v. Shanley, 455 Mass. 752, 761 (2010). See Mass. G. Evid. § 702 (2023). "We review a judge's determination to admit or exclude expert testimony . . . for an abuse of discretion." Hinds, supra at 218, quoting Commonwealth v. DiCicco, 470 Mass. 720, 729 (2015).

Here, the Commonwealth's expert, who was the head of the Boston police department's ballistics unit at the time of his testimony, based his opinion on his knowledge of firearms, his observations of gunshot wounds to other individuals, the autopsy report, and photographs of the victim's injuries. As the bases for his opinion, Vickers pointed to, among other things, the bullet's path, the type of laceration, and the presence of bullet fragments rather than an intact bullet.

We note that, on cross-examination, Vickers testified that he could not rule out that numerous other types of firearms, including an automatic weapon, could have been used as the murder weapon. In response to a question, however, he did conclude that, based on the victim's injuries, a rifle had not been used. In other words, Vickers did not express any view on whether "a particular firearm" or type of firearm had been used; rather, he "offer[ed] an opinion . . . that narrow[ed] the scope of possible firearms" that could have been used as the murder weapon. Commonwealth v. Pytou Heang, 458 Mass. 827, 848 (2011). Given the expert's qualifications and experience, the judge did

not abuse her discretion in admitting the opinion testimony that the victim's injuries, as well as the recovered fragments, were consistent with the use of a high velocity firearm.  See Commonwealth v. McGee, 467 Mass. 141, 153 (2014) (no error in admitting opinion "concerning the gun's membership in the class of guns that could have" been murder weapon).

The defendant also argues that the expert's testimony was unduly prejudicial to him because it potentially connected the firearm stolen by Anderson and Tate to the shooting.  We disagree.  The fact that a .357 magnum revolver is a "perfect example" of a high velocity weapon merely demonstrated why the expert's testimony was particularly relevant.[22]  See Commonwealth v. Kindell, 84 Mass. App. Ct. 183, 187-188 (2013) ("the measure of prejudice is not whether the evidence simply is adverse to the party against whom it is offered").

8.  Review under G. L. c. 278, § 33E.  Finally, we have reviewed the entire record and discern no basis upon which to exercise our extraordinary authority under G. L. c. 278, § 33E.

Conclusion.  For the foregoing reasons, the order denying the motion for a new trial is affirmed.  The judgment as to the

---

[22] We also note that the testimony was cumulative of other evidence suggesting that the stolen .357 magnum was used to kill the victim, including Tate's testimony that she saw Anderson with that firearm immediately after the shooting.  See Commonwealth v. Lodge, 431 Mass. 461, 469 (2000).

defendant's conviction of unlicensed possession of a firearm is reversed, and that verdict is set aside.  The defendant's conviction of murder in the first degree is affirmed, and the matter is remanded for resentencing consistent with our decision in Mattis, 493 Mass. at    .

So ordered.